IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CRISTA CHUA                                                                PLAINTIFF

V.                           CASE NO. 5:18-CV-05207

ANDREW M. SAUL,[1] Commissioner
Social Security Administration                                              DEFENDANT

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 13) of the Honorable Erin L. Wiedemann, Chief United States Magistrate Judge for the Western District of Arkansas, filed in this case on October 22, 2019. The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") decision to deny Plaintiff Crista Chua's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Ms. Chua filed objections to the R&R (Doc. 14), and the Court has now reviewed the entire case *de novo*, paying particular attention to those findings or recommendations to which objections were made. *See* 28 U.S.C. 636(b)(1)(C). For the reasons stated herein, Ms. Chua's objections are overruled, and the R&R is **ADOPTED IN ITS ENTIRETY**.

## I. BACKGROUND

Ms. Chua filed her application for DIB on August 4, 2016, alleging an inability to work since June 2, 2016, due to narcolepsy with cataplexy, fibromyalgia, Hashimoto's disease, thoracic outlet syndrome, bilateral carpal tunnel syndrome, osteoarthritis, temporomandibular joint disorder, patella femoral syndrome, chronic headaches, and

---

[1] Andrew M. Saul has been appointed to serve as Commissioner of Social Security and is substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d)(1).

1

dizziness. Following an administrative hearing on November 15, 2017, the ALJ determined that Ms. Chua had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, asthma, fibromyalgia, and depression. The other impairments claimed by Ms. Chua were not deemed severe. As for the severe impairments, the ALJ concluded that they did not meet or equal the level of severity of any impairment listed in the Listing of Impairments in Appendix I, Subpart P. According to the ALJ, Ms. Chua retained the residual functional capacity ("RFC") to do sedentary work, except that she could perform only simple tasks with simple instructions and could have only incidental contact with the public. With the help of Vocational Expert testimony, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Ms. Chua could perform, given her functional restrictions.

In Ms. Chua's objections to the R&R, the first eleven pages are cut and pasted from her appeal brief. *See* Doc. 14, p. 1 ("Plaintiff re-iterates her arguments made in Plaintiff's Appeal Brief (Doc. 11)."). None of these arguments reference any portion of the R&R. Accordingly, the Court will not treat them as objections that require *de novo* review. *See United States v. Azure*, 539 F.3d 904, 909 (8th Cir. 2008) ("Matters referred to a magistrate judge under both sections 636(b)(1) and 636(b)(3) must be reviewed de novo by the district court *when a party objects to a magistrate judge's findings.*" (emphasis added)).

Beginning on page thirteen of her objections, Ms. Chua critiques specific portions of the R&R, and these will be treated by the Court as proper objections. First, Ms. Chua argues that her tension headaches were improperly deemed "non-severe" by the ALJ. Second, she objects to a finding that she was non-compliant with her doctors' orders.

Third, she argues that the ALJ improperly viewed her receipt of unemployment benefits as a "discrediting factor" in her claim for disability. Fourth, she contends that the Magistrate Judge erred in failing to consider the opinion of Catherine Thomas, a vocational rehabilitation counselor with Arkansas Rehabilitation Services. Fifth, Ms. Chua disagrees with the ALJ's finding that she was "laid off" from a recent job; she argues instead that she left the job due to her medical conditions. Sixth, she objects to the ALJ's decision to discount Dr. Shannon Wipf's recommendations noted on a "Treating Physician's Migraine Headache Form." Seventh, Ms. Chua objects to the ALJ's rejection of Dr. Madhu Kalyan's medical opinions noted on a "Physical RFC Questionnaire." Relatedly, Ms. Chua argues that the work restrictions recommended by Drs. Wipf and Kalyan should have been credited by the ALJ in arriving at the appropriate RFC. The Court will address these objections in turn.

## II. OBJECTIONS

### A. Tension Headaches

The substantial evidence in the record supports the ALJ's finding that Ms. Chua's tension headaches do not qualify as a severe impairment. The most recent evidence in the file on tension headaches was submitted by Ms. Chua's family practice physician, Dr. Wipf. She examined Ms. Chua on November 11, 2016, and on or around the same date, she filled out a form that Ms. Chua gave her entitled "Treating Physician's Migraine Headache Form." (Doc. 9, p. 281). Dr. Wipf struck through the words "Migraine Headache" on the form and wrote in the words "Tension Headache." *Id.* Ms. Chua then submitted this form in support of her application for social security disability benefits.

Dr. Wipf's medical notes from November 11, 2016, state that Ms. Chua experiences tension headaches that start at her neck and spread like "a vice" on her head. *Id.* at p. 503. According Ms. Chua, these headaches last up to 72 hours and occur five days per week. *Id.* Ms. Chua also told Dr. Wipf that "[t]he headaches do not interfere with her ability to work." *Id.* When Dr. Wipf performed a physical examination on Ms. Chua, she noticed tenderness "at the C-spine paraspinous muscles and their extension to the musculature of the scalp diffusely." *Id.* at p. 504. Dr. Wipf offered to refer Ms. Chua to a neurologist to seek specialty treatment to combat the tension headaches, but Ms. Chua refused, citing money concerns. *Id.* In the end, Dr. Wipf assessed Ms. Chua as having "[c]hronic tension-type headache[s]" but noted that they were "not intractable." *Id.* at p. 504.

As the ALJ remarked in his opinion, Ms. Chua's medical history is noticeably devoid of complaints about tension headaches after her November 2016 appointment with Dr. Wipf. For example, Ms. Chua saw Dr. Marat Grigorov, a neurosurgeon, on July 6, 2017, and complained of neck pain, numbness and tingling in her hands, and fatigue in her legs. These symptoms were all listed on Dr. Grigorov's report. He also noted that she had "no headache." (Doc. 9, p. 555). He examined her head and observed that there was "no tenderness or evidence of trauma." *Id.*

On August 29, 2017, Ms. Chua again consulted with Dr. Wipf. During that visit, Dr. Wipf made detailed notes and listed many symptoms Ms. Chua had complained of in the past, as well as ones she noted currently. One of the symptoms listed was a "[t]ension-type headache." *Id.* at p. 564. However, in the "Assessment/Plan" section of Dr. Wipf's notes, the only complaints she addressed were the following: neck pain,

4

hypothyroidism, fibromyalgia, hearing loss, asthma, and osteoarthritis. *See id.* at p. 567. Dr. Wipf also prescribed medications for these conditions and gave Ms. Chua specific instructions. Importantly, "headaches" did not appear on the list.

The Court agrees with the R&R that it is not credible that Ms. Chua suffered disabling tension headaches five days per week, to the degree that they interfered with her ability to work, but that she failed to specifically address this symptom and seek further treatment throughout 2017. Dr. Wipf's treatment notes confirm that the severity of these headaches is alleviated with certain medications, namely Cyclobenzaprine and Ibuprofen. Also, Ms. Chua admitted to Dr. Wipf that the headaches did not prevent her from working. For all these reasons, substantial evidence in the record supports the ALJ's finding that Ms. Chua's tension headaches are not severe or disabling. This objection is overruled.

### B. Non-Compliance with Orders

In her second objection, Ms. Chua references the portion of the R&R in which the Magistrate Judge agrees that at least *some* incidents of noncompliance with doctors' orders were due to Ms. Chua's legitimate concerns about side effects associated with certain medications. The ALJ's discussion of non-compliance takes up relatively little space in the overall opinion—only a few short sentences. In addition, the Court agrees with the Magistrate Judge that substantial evidence in the medical record as a whole supports the ALJ's finding that Ms. Chua did not, in fact, comply with doctors' orders in at least some instances, including when she failed to pursue Dr. Grigorov's recommendation that she be evaluated for cervical disc surgery and when she failed to follow up with her audiologist's recommendation that she be evaluated for hearing aids. This objection is overruled.

## C. Unemployment Benefits

With regard to Ms. Chua's receipt of unemployment benefits, the R&R states:

> The record further reveals that Plaintiff received unemployment benefits during the relevant time period. While the receipt of these benefits is not conclusive, applying for unemployment benefits adversely affects credibility because an unemployment applicant "must hold himself out as available, willing and able to work."

(Doc. 13, pp. 14–15 (quoting *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014))).

Ms. Chua objects to the Magistrate Judge's assessment of her receipt of unemployment compensation as a "discrediting factor" in her application for disability benefits. (Doc. 14, p. 14). To Ms. Chua, the fact that she applied for and received unemployment benefits for a period of time should not weigh at all in the decision of whether to award her disability benefits. She points out that while she collected unemployment payments, she was unable to find another job even though two state agencies did their best to assist her.

The Court finds that the Magistrate Judge did not commit error in concluding that Ms. Chua *did* apply for and receive unemployment benefits for a period of time. Furthermore, during the administrative hearing, Ms. Chua admitted under oath to the ALJ that she received unemployment benefits beginning in June of 2016, which is during the period she claims she was disabled. *See* Doc. 9, p. 47. The ALJ correctly noted that Ms. Chua made the following contradictory claims during the same relevant time period: (1) that she was capable of working if a suitable employment opportunity arose (while she was collecting unemployment benefits) and (2) that she was incapable of working due to a disability (while she was applying for disability benefits). This objection is overruled.

### D. Opinion of Catherine Thomas

Catherine Thomas is a vocational rehabilitation counselor employed by Arkansas Rehabilitation Services, a state agency that works with disabled Arkansans to provide a variety of training and career preparation programs. *See* https://arcareereducation.org/about/arkansas-rehabilitation-services (last accessed on December 19, 2019). Ms. Thomas, who is not a doctor, opined that Ms. Chua cannot perform more than four hours of work per day.

Upon review of the record, the Court agrees with the ALJ's decision to afford little weight to Ms. Thomas's opinions about Ms. Chua's ability to work. The ALJ pointed out that Ms. Thomas failed to indicate how much personal interaction she had with Ms. Chua prior to offering these opinions. Ms. Thomas also failed to state the reasons why she believed Ms. Chua's workday should be restricted to only four hours. Without more, it is reasonable to conclude that Ms. Thomas's opinions derive from Ms. Chua telling her that she could not work more than four hours a day. This objection is overruled.

### E. Whether Ms. Chua Was "Laid Off"

Ms. Chua disagrees with the ALJ's observation that even though many of her medical conditions appear to have been present throughout her lifetime, or at least during the last couple of decades, she has still managed to work full-time in jobs that require skill, professionalism, and a degree of concentration. She held her last job as an office manager for approximately eight years. The ALJ observed that it was only *after* she was laid off from that job that she applied for disability benefits and complained that her lifelong medical conditions rendered her unable to work. Ms. Chua counters that "she was not laid off, but quit due to a worsening of her medical conditions." (Doc. 14, p. 15).

The ALJ found that Ms. Chua's RFC was appropriate for sedentary work with some limitations—which is consistent with the work she performed before she applied for disability benefits. Also, Ms. Chua testified—and her mother confirmed in an affidavit— that she did not leave her last long-term position due to disabling health conditions but because her company was acquired by another company and her position was terminated. *See* Doc. 9, p. 48 ("Well, technically I left because my position was terminated."), p. 283 ("She worked from her home until she was laid off due to the company being acquired."). Therefore, the ALJ did not commit error when he observed that Ms. Chua "quit working, not because of her impairments, but because she was laid off." (Doc. 9, p. 25).

Given that the ALJ was not wrong in his assessment of Ms. Chua's work history, her reasons for stopping work, and her testimony regarding the longstanding nature of her major medical complaints, the Court finds no reason to disagree with the ALJ's opinions as to Ms. Chua's overall credibility. The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). This objection is overruled.

### F. Discounting Dr. Wipf's Opinions

This objection concerns Dr. Wipf's "Treating Physician's Migraine Headache Form" (Doc. 9, p. 281) that was filled out in November of 2016. Ms. Chua argues that the Magistrate Judge erred in finding that this form was submitted too late to be considered by the ALJ, since it was dated November 11, 2018. Although the form bears that date—

in Dr. Wipf's own handwriting—other evidence in the record indicates that the form was completed on November 11, 2016.

Dr. Wipf's recommendations and observations in this form were not given weight by the ALJ because they were not supported by any other medical evidence in the record, particularly any medical evidence from 2017. As the Court of Appeals explained in *Hogan v. Apfel*:

> A treating physician's opinion is due "controlling weight" if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole. The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions.

239 F.3d 958, 961 (8th Cir. 2001) (internal quotation marks and citations omitted). Here, Dr. Wipf's medical opinions, as stated on the "Treating Physician's Migraine Headache Form," are not supported by any clinical or laboratory diagnostic techniques; they are based, instead, on Ms. Chua's subjective description of her symptoms. Further, the recommendations on the form stand in contrast to Ms. Chua's claim that her headaches did not prevent her from working *and* in contrast to the medical record from 2017, which contains no mention of specific treatment for headaches. This objection is overruled.

### G. Rejection of Dr. Kalyan's Opinions

Ms. Chua's last objection is that the ALJ erred in giving little weight to Dr. Kalyan's recommendations made on a "Physical RFC Questionnaire" on November 7, 2017. (Doc. 9, p. 597). On the Questionnaire, Dr. Kalyan opined that Ms. Chua would need daily, unscheduled breaks from work every one or two hours due to daytime sleepiness. The Magistrate Judge explained in the R&R that the ALJ's decision was not erroneous, given

the fact that Dr. Kalyan failed to provide any opinion about Ms. Chua's functional abilities on the rest of the Questionnaire. Moreover, the notes from Dr. Kalyan's prior office visits with Ms. Chua failed to support the work restrictions he later recommended on the Questionnaire. For example, on September 20, 2016, Dr. Kalyan noted during an office visit with Ms. Chua that she reported things were going well and that she had no concerns. *Id.* at p. 457. On April 20, 2017, Ms. Chua met with Dr. Kalyan and reported the same thing. He wrote in his notes that she had been taking Ritalin three times a day, as well as a daily nap, and that she had "been working 6 days a week." *Id.* at p. 591. Later, on July 19, 2017, Dr. Kalyan described Ms. Chua's symptoms of daytime sleepiness as "moderate" and identified a "relieving factor" as "Ritalin," which she was instructed to take "as needed" to combat daytime sleepiness. *Id.* at p. 586.

In light of the fact that Dr. Kalyan's treatment notes state that Ms. Chua has "no complaints" about disabling feelings of sleepiness and that her symptoms have been relieved with Ritalin, the recommendations he later makes on the Physical RFC Questionnaire are not medically supported. The Questionnaire is also blank in many places, which adds to the overall lack of helpfulness of the document in evaluating Ms. Chua's RFC. For example, in response to a question on the Questionnaire about whether Ms. Chua can tolerate work stress, Dr. Kalyan answered, "Pt. not employed." *Id.* Then, in response to a series of four questions about Ms. Chua's functional limitations—including the number of hours she can sit, stand, or walk—Dr. Kalyan simply noted that Ms. Chua was "currently unemployed," and he left the questions blank. *Id.* at p. 604. In view of the medical record as a whole, the ALJ did not err in discounting Dr. Kalyan's opinions on this Questionnaire. This objection is overruled.

### III. CONCLUSION

As all objections are **OVERRULED**, **IT IS ORDERED** that the R&R (Doc. 13) is **ADOPTED IN ITS ENTIRETY**, and the final decision of the ALJ to deny the Plaintiff benefits is **AFFIRMED**. Judgment will enter accordingly.

**IT IS SO ORDERED** on this 2nd day of January, 2020.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE